Acker v. Railroad Co.


No. 22,247.

Phillip Acker, *Appellant*, v. The Union Pacific Railroad
Company, *Appellee*.

### SYLLABUS BY THE COURT.

Auto Truck—*Crossing Railroad Track—Duty of Driver—Contributory
Negligence*. In a railway crossing case, it is *held* (following *Wehe v.
Railway Co.*, 97 Kan. 794, 156 Pac. 742, and kindred cases) that where
the plaintiff and his employee who was driving his automobile dis-
covered, just before they were about to cross the railroad track, that
their view. of the track was obstructed by clouds of smoke from en-
gines standing on another track, it was contributory negligence for
them to proceed to cross without stopping and waiting or going to
some point where a view of the track could be obtained, if there was
no other way of determining whether a train was approaching.

Appeal from Geary district court; Roswell L. King, judge.
Opinion filed March 6, 1920. Affirmed.

*James V. Humphrey*, and *Arthur S. Humphrey*, both of
Junction City, for the appellant.

*R. W. Blair, T. M. Lillard*, and *O. B. Eidson*, all of Topeka,
for the appellee.

The opinion of the court was delivered by

Porter, J.: The action was for damages resulting from a
collision between Acker's truck and a Union Pacific train. A
demurrer to the plaintiff's evidence was sustained, from which
he appeals.

The accident occurred at a country highway crossing and in
broad daylight. Acker was employed to transfer certain house-
hold goods from Junction City to Manhattan on January 30,
1918. He was riding on the truck, which was being driven by
Ellis, who was in his employ. Acker testified that when they
came in sight of the crossing, about a mile therefrom, they saw
two trains standing on the first track headed as though east-
bound. The engine of the first train was about half a block
from the crossing and had three or four cars and a caboose
attached to it. They saw the semaphore to the left standing
up and decided correctly that this was because of the standing

26—106 Kan.

trains. At the culvert, 75 or 100 feet from the crossing, the driver disengaged the auto engine and nearly stopped—not to a "dead" stop, but just so the shift could be made to "low" going down a little incline from the culvert. Thence they proceeded on low, until struck, able and on the alert to stop on the instant. They looked for flagmen and trainmen, but none was in sight. They listened for signal of whistle or bell, but none was given. They saw, while approaching, dense smoke issuing from the engines and settling over the fields on the other side of the tracks. When on the track, in front of the first train, they perceived for the first time that this smoke settled down over the second track so as to screen it from their view. Acker thought of stopping and going up between the tracks past the smoke, but concluded it wouldn't do, because he would have to pass the first train to the second engine. They concluded, also, it would be safe to cross. On cross-examination Acker testified:

"Q. You didn't think there would be any smoke in your way from this engine until you had crossed over the first track and was onto the eastbound track? A. Until we were on the first track.

"Q. When you were getting up on the first track, then you made up your mind that there was enough smoke there so you knew you couldn't see the other side of that smoke? A. Yes, sir.

"Q. Nevertheless, having your view cut off in that way, you decided to take your chances and drive on regardless of what was beyond that smoke? A. No, sir.

"Q. You did that? A. I was listening and looking.

"Q. But you knew you couldn't see anything beyond that smoke? A. Yes, sir.

"Q. And so far as knowing anything further than what you might hear, knowing that the smoke cut off your view, you decided, nevertheless, to go on the track there and take the chances, did you? A. I decided it was safe, yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. By the time you actually got over that track (first track) then, if it hadn't been for the smoke you had an absolutely clear view down the (second) track for just as far as the eye would reach? A. I would have if it hadn't been for the smoke, yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. You could have stopped right then and there, after you got to the first track and saw the smoke was obstructing your view, you could have stopped there before getting onto the second track? A. I could have stopped any place.

"Q. Instantly? A. Yes, sir.

"Q. So, when you found smoke there that you hadn't anticipated—
You had thought as you drove up there: 'Well, as soon as I get so I can
see beyond that train I will know whether there is a train on the other
track, didn't you? A. I thought I would be able to, yes, sir.

"Q. When you got to that point you found smoke? A. Yes, sir.

"Q. Notwithstanding that smoke, you didn't stop, as you might have
done, did you? A. The only way I could figure it out myself was to
stop and walk up there; and I thought I would have to pass that engine
and go by the second one, because the same smoke would be coming from
it; because the steam was coming from the other side."

In sustaining the demurrer the trial court commented upon
the testimony showing that the truck was under complete con-
trol, not traveling faster than a man could walk, and that
Acker and Ellis could have stopped it immediately; that the
view of the track was obstructed by two other trains, and when
they reached the rail of the first track they could have seen
down the track, except for the fact that there was a thick,
heavy smoke, through which they could not see. Because the
automobile "never stopped, but kept going," notwithstanding
the evidence showed that both the plaintiff and his driver
knew that the smoke prevented their view of the track, the
court ruled that under the doctrine of *Wehe v. Railway Co.*,
97 Kan. 794, 156 Pac. 742, and *Williams v. Electric Railroad
Co.*, 102 Kan. 268, 170 Pac. 397, holding that an automobile
driver must stop and go to a point where he can see, if there is
no other way of determining whether there is a train ap-
proaching on a track which he is about to cross, the plaintiff's
contributory negligence prevents his recovery.

The doctrine stated in the cases referred to by the trial
court has been applied where weather conditions obstructed
the view of an auto driver about to cross a railroad track; thus,
where snow or rain obstructed the view of the driver. (*Gage
v. Railway Co.*, 91 Kan. 253, 137 Pac. 938; *Bunton v. Railway
Co.*, 100 Kan. 165, 163 Pac. 801. To the same general effect,
see *C. K. & W. Rld. v. Fisher*, 49 Kan. 460, 30 Pac. 462; *Mor-
gan v. Railroad Co.*, 91 Kan. 496, 138 Pac. 575; *Railway Co. v.
Wheeler*, 80 Kan. 187, 101 Pac. 1001; *Land v. Railroad Co.*, 95
Kan. 441, 148 Pac. 612.) In the case of *Morgan v. Railroad
Co.*, supra, the view of the driver of the vehicle was obscured
by reason of smoke arising from cinders and ashes left on
the track by a freight train. It was held that it was his duty
to wait until he could discover the true situation.

The judgment is affirmed.