No. 28,010.

P. E. CLARK, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE
RAILWAY COMPANY, *Appellee*.

(272 Pac. 128.)

Opinion filed December 8, 1928.

Robert C. Mayse, of Ashland, and E. C. Minner, of Dodge City, for the appellant.

William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong, all of Topeka, and William Osmond, of Great Bend, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: P. E. Clark brought this action against the Atchison, Topeka & Santa Fe Railway Company to recover damages for personal injuries and loss sustained in an accidental collision at a railroad crossing just west of the railway station at Ashland. The trial resulted in a general verdict for plaintiff awarding him damages in the sum of $6,155, and with the verdict the jury returned answers to special questions submitted by the court. Upon motion the court gave judgment for defendant on the special findings of the jury. From that judgment plaintiff appeals.

In his petition plaintiff alleged that about the noon hour of September 29, 1924, while he was driving a grain binder to which was attached a team, upon a road and over a crossing of the defendant's tracks, in a cautious and prudent manner, a freight train of defendant negligently operated and running at an unusual and excessive rate of speed approached the crossing without sounding a whistle, ringing a bell or giving other signals and negligently drove the train against the binder on which plaintiff was riding, severely wounding him and injuring his property, for which damages were asked. It appears the railroad runs east and west through Ashland, and that plaintiff was engaged in driving his team and machine to his home. He drove some distance east along the railroad track and then turned south towards the crossing along the road passing the station house, which is seventy-two feet east of the railroad crossing and nineteen feet to the north rail of the main track, on which the collision occurred. When he was on the crossing the train of the defendant, composed of an engine and twenty-one cars, approached the station from the east, running at a speed of about twenty miles per hour. There were some obstructions to a view of the track towards the east of the crossing. Before going upon the crossing the plaintiff slowed down his team and looked and listened for a train, but did not stop or take any other precaution to ascertain if there

was danger from approaching trains. After the team had passed over the track and the binder was upon it, the defendant's engine struck the machine on which he was riding. Material findings in respect to the situation on or about the crossing and the action of the parties follow:

"Q. How far east of the crossing was the engine of defendant's train when the engineer first discovered plaintiff or his team? A. One hundred and twenty-five feet.

"Q. How far east of the crossing was the engine of defendant's train when the fireman first discovered plaintiff's team? A. Front of engine was at east edge of crossing where plaintiff's binder was hit.

"Q. Where was defendant's engine when plaintiff first saw it? A. Two hundred feet away to the east.

"Q. Did the engineer set the emergency brakes and use all precautions he could have used immediately after he discovered plaintiff's predicament? A. No; blew four blasts before applying brakes.

"Q. How far east of the crossing could the engineer have discovered plaintiff's predicament? A. Three hundred and fifty feet.

"Q. Could the engineer, after he could have discovered plaintiff's predicament, have stopped the train and avoided the collision? A. Yes, if traveling fifteen or twenty miles an hour.

"Q. Could plaintiff after discovering the approaching train have avoided the accident? A. No.

"Q. If you find that defendant was negligent, state in what respect he was negligent. A. He should have applied brakes before blowing four blasts.

"Q. How far from main track on which plaintiff was hurt was it to the south side of depot? A. Twenty-one feet.

"Q. Did not the railroad track run practically due east in a straight line from the crossing where accident occurred for more than a mile? A. Yes.

"Q. Could not a person see east along the main line track for a distance of at least a mile from any point between the south line of station and the main line track? A. No, on account of bay window obstructing view.

"Q. Was the ground west of the road smooth and level enough so that the plaintiff should have turned on to it before going on tracks? A. Yes.

"Q. Did plaintiff do so? A. No.

"Q. What precautions did plaintiff take before going over track? A. Looked, slowed up team and listened.

"Q. Was there not a railroad crossing on a public road a short distance east of station, where an unobstructed view of track each way could be had? A. No, not unless close to main line of track.

"Q. How far back of the heads of his horses was plaintiff sitting on binder? A. Twenty-three feet.

"Q. Did plaintiff stop before driving his team on to track? A. No.

"Q. Was the place where plaintiff drove on a public, laid-out road? A. Yes, for the reason that it has been kept up and maintained by defendant and used by the public extensively for about twenty years.

"Q. Could plaintiff have seen east along the railroad until he reached a point practically west of the south line of station? A. No.

"Q. At what rate was plaintiff traveling when his horses reached track? A. One mile per hour.

"Q. At what rate was train traveling when it passed the station window? A. Approximately twenty miles per hour."

While there were several grounds of negligence alleged, the findings of the jury have eliminated all of them except that the engineer blew the whistle before he applied the brakes. The averments of negligence as to the excessive speed of the train, the failure to give necessary signals of the approach of the train to the crossing and in the existence of elevators and other buildings along the track that obstructed the view towards the east from which the train was coming, are negatived by the special findings. (*Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590; *Morlan v. A. T. & S. F. Rly. Co.*, 118 Kan. 713, 236 Pac. 821.) Can the defendant be held liable for the collision because the engineer blew the whistle before applying the brakes? When the plaintiff's team and binder came within the view of the engineer, the team had not entered upon the track and the engine was only 125 feet from the crossing. It is said it was not possible for the engineer to have discovered the plaintiff's predicament until he was within 350 feet of the crossing. Who can say that it would have been more prudent and in the exercise of better judgment to have applied the brakes before sounding a warning? The warning whistle gave the plaintiff an opportunity to stop and turn aside instead of driving on over the track. It appears the team got across and that the binder was on the middle of the track when it was struck. There was an open space and smooth ground on the side of the track upon which the team and binder might have been driven. If the engineer had applied the brakes before sounding the warning and a collision had occurred, the defendant might have plausibly contended that if the warning signal had been first given he could have turned aside and have saved himself and his property. There was only a moment of time for the engineer to consider which was the more prudent course for him to pursue, or, for that matter, for the plaintiff to consider and decide whether to stop, turn aside or drive on. It is well established that a person suddenly confronted with impending danger, without time for deliberation as to which one of two or more acts will be wisest and best, who acts in good faith and takes an action that turns out not to have been the most

judicious, cannot be charged with negligence. (*Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663.)

In the circumstances of the case it cannot well be said that the engineer chose the wrong means to avoid the collision, and at any rate negligence in this emergency cannot be predicated upon the one chosen by the engineer. It was found that the team and machine were approaching the track at the rate of a mile an hour when seen by the engineer, and it was natural for him to conclude that the plaintiff on hearing the warning signal would stop or turn aside and thus avoid a collision. It is said that the team was frightened by the whistle and was not easily managed, but that does not tend to show that the engineer was negligent in the course of action taken.

It appears that the railroad is laid almost due east and west through the city of Ashland. The plaintiff drove his team and machine a short distance, traveling east along the north side of the track, and then turned south upon a road which passed seventy-two feet west of the station, which was twenty-one feet from the railroad track. The station obstructed his view to the east, and it appears that his position on the binder was twenty-three feet back from the heads of the team. Near by was another crossing over which plaintiff might have driven with reasonable safety. He was familiar with the crossing, had used it many times and necessarily knew its environment and the peril of crossing there with the unusual and unwieldy outfit he was managing. He knew he could not obtain a view of a coming train until the team was about to enter upon the track. It was his duty to use ordinary care in approaching such a dangerous crossing. Ordinary care requires that a traveler approaching a railroad crossing shall take such precaution for his safety as would be used by persons of ordinary prudence under like circumstances and conditions. In some cases it is enough to look, in other cases to look and listen, in other cases to stop as well as look and listen, and in still others he should leave his vehicle and go forward to a point where he can ascertain whether he can cross safely. (*Railway Co. v. Jenkins*, 74 Kan. 487, 87 Pac. 702; *Railway Co. v. Hansen*, 78 Kan. 278, 96 Pac. 668; *Railway Co. v. Jenkins*, 79 Kan. 17, 98 Pac. 208; *Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023; *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742; *Acker v. Railroad Co.*, 106 Kan. 401, 188 Pac. 419.) It was not due dili-

gence for plaintiff to look and listen where he could not see or hear the train. He failed to stop, but drove on the track without taking other precautions than to slow down and look and listen, and knowing of the obstructions and that the ordinary means for ascertaining the perils of the crossing were not available, he should have stopped his team and vehicle and gone forward to a point where he could have had a view of the track and of the coming train. If he had done so he would have had a view of the track for a mile east of the crossing and could thus have avoided the collision and the injury suffered. It was shown, too, that there were posts near the station to which he could have tied his team, if it was necessary to tie them, while he went forward.

Under the circumstances of the case and within the authorities it must be held that the plaintiff himself was negligent. The plaintiff invokes the application of the doctrine of the last clear chance, but the facts make it clear that the doctrine has no application here. Plaintiff's negligence continued to the time of the collision, and, more than that, there is no basis for the claim that defendant failed to exercise ordinary care to avoid injury to plaintiff upon discovering his peril. (*Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680.)

Finding no error in the record, the judgment is affirmed.

HARVEY, J., not sitting.