No. 29,988.

E. E. Kindig, *Appellee,* v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant.*

(2 P. [2d] 75.)

Opinion filed July 3, 1931.

*William R. Smith, Alfred A. Scott* and *C. J. Putt,* all of Topeka, for the appellant.

*F. J. Oyler* and *G. R. Gard,* both of Iola, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action for damages to an automobile and for personal injuries alleged to have been sustained by plaintiff in a collision with the defendant's train, and to have resulted from defendant's negligence. The jury answered special questions and returned a verdict for plaintiff. Defendant has appealed.

Defendant's tracks and right of way extend north and south through the city of Iola. They are intersected by West street, a paved east-and-west street which is much used, being the principal

thoroughfare of the city and a part of state highway No. 54 of the state highway system. Defendant's passenger depot, its freight depot and principal switch tracks are south of West street, but it has switch tracks north of West street which serve the stockyards and several industries. It has two tracks crossing West street—its main-line track and a switch track. It keeps a flagman at this crossing from nine o'clock in the forenoon until five o'clock in the afternoon, and there was evidence that at later times in the day, when switching was being done across this street, there was usually or frequently a flagman or trainman there to direct traffic. Defendant maintained an electric crossing bell on a post on the east side of the crossing. The casualty occurred about eight o'clock on the evening of November 2, 1929. Defendant's freight train had work to do at Iola that evening. The train was cut in two south of West street, the engine proceeded north to the stockyards with three cars and picked up twelve cars on the stock track, and was backing the string of fifteen box cars south on the main-line track across West street. Plaintiff lived at Iola and was familiar with this crossing. He frequently crossed defendant's tracks on West street, both in the daytime and in the evening. He knew defendant kept a flagman at this crossing in the daytime, and usually or frequently in the evening when switching across this street was in progress. He knew of the electric crossing bell and had been at the crossing when it was ringing and at other times when it was not. On the evening in question he drove his Ford sedan east on West street, intending to cross defendant's tracks. There was an electric street light on the east side and another on the west side of the tracks at this crossing. It was after dark, there was no moon, though the stars were shining. The lights on his car were burning, his car windows were open, the electric signal bell was not ringing, and there was no flagman or track man at the crossing. Because of a rough place in the pavement he slowed down a short distance before reaching the track and continued to drive slowly. He testified he looked both ways and could see no train, and listened and could hear none; that just about the time he started to drive upon the track he saw the train. The front wheels of his car had crossed the first rails of the track when he was struck by the freight train, and his car, with plaintiff in it, was pushed south perhaps seventy-five feet before defendant's train was stopped. His car was damaged beyond repair, and he was injured. No point is made on this appeal about the amount of damages if

plaintiff is entitled to recover. An ordinance of the city required that when trains were moved across the street, not preceded by an engine, the speed should not exceed five miles per hour and a brakeman should be stationed on the end of the train or car next to the street to warn passengers on the street of the approach of the train, and to give signals to the engineer of danger of accident, and to stop the train when necessary to prevent an accident. Another ordinance required defendant to construct and maintain a sufficient wigwag signal of modern type, or keep a watchman at street crossings extraordinarily dangerous on account of the nature thereof and the amount of traffic.

Answering special questions, the jury found that plaintiff was familiar with the crossing, that he had proper headlights on his car and that they were lighted, that defendant maintained a bell-ringing signal at this intersection but that it was not working at the time of the casualty; that there were no conditions, surroundings or circumstances on this particular night at the crossing that would require plaintiff to bring his automobile to a dead stop before driving on the crossing; that defendant did not have any lights or other warning signals on the rear of the box car approaching the crossing, and did not sound the engine whistle while backing the train over the crossing; that the engine bell was ringing; that the speed of defendant's train was ten miles per hour and that of plaintiff's car four miles per hour; that plaintiff had complete control of his car; that there were electric street lights burning on the east and west sides of the railroad crossing, and that defendant's negligence consisted of improper signals and too much speed.

It is, of course, the well-settled law in this state that a railroad track is of itself a sign of danger, that one crossing it at an intersection must realize that he must stop for the train, that the train cannot stop for him, and that due care on his part requires that he look and listen for approaching trains, and, if his view is obstructed and it is essential for his safety for him to do so, that he stop and if necessary go forward on foot and look for trains. (*Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742; *Acker v. Railroad Co.*, 106 Kan. 401, 188 Pac. 419; *Rule v. Railway Co.*, 107 Kan. 479, 192 Pac. 729. See, also, *B. & O. R. R. v. Goodman*, 275 U. S. 66.) But he is not, under all circumstances, as a matter of law, required to stop before crossing a railroad track (*Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023). At busy intersections, such as busy city streets, where a

flagman is ordinarily kept when trains are crossing, the absence of the flagman at the time he attempts to cross is a matter properly to be taken into consideration by the jury in determining his contributory negligence. Where a railway maintains a mechanical device, such as an electric bell, less reliance can be placed upon it than could be placed on the flagman, for it may be out of repair. (*Jacobs v. Railway Co.*, supra.) Perhaps it is more accurate to say that the person approaching the intersection cannot rely entirely on the fact that the mechanical device is not in operation where one is maintained, or that the flagman is not present where one is usually maintained. He still is under the duty to use due care for his own safety, but these are potent factors to be taken into consideration by the jury in determining his contributory negligence. (*Bollinger v. Railway Co.*, 113 Kan. 124, 213 Pac. 644, and cases there cited; also, *Peterson v. Railway Co.*, 115 Kan. 751, 225 Pac. 116; *Polfer v. Chicago, G. W. Rld. Co.*, 130 Kan. 314, 286 Pac. 240.) It is true a witness on behalf of plaintiff, who was following him in a car about half a block away, testified that he saw this train as it came into the intersection; also a witness for plaintiff, who at the time of the collision was at a filling station on the other side of the track, testified that he could see the train as it approached the intersection. From this it is argued that plaintiff could have seen it. But there was no light north of the track except what little was in the engine cab fifteen car lengths or more north of the intersection. Defendant's train was moving with but little noise. It is not seriously argued that he should have heard it. There was evidence that there was no brakeman or light on the end of the train or car which was approaching the intersection. It is quite possible, in the situation plaintiff was in, he could not see this train moving out of the semidarkness from the north until it came within the range of the lights of his automobile. The absence of any flagman, or anyone directing the traffic at the intersection, and the fact that the bell was not ringing, as well as all of the other evidence bearing upon the circumstances, were properly to be considered by the jury in determining whether plaintiff was guilty of contributory negligence. In view of all the facts and circumstances we deem that it was a proper question to submit to the jury.

There was a sharp conflict in the evidence as it related to the negligence of defendant. Evidence on behalf of plaintiff tended to show that the signal bell was not ringing, that plaintiff was driving

slowly on the right-hand side of the street, that defendant's train was backing across the intersection from the semidarkness to the north, with little noise, with no warning signal of any kind, and without a watchman or a brakeman on the front end of the car as it crossed the intersection. Witnesses on behalf of defendant testified that the signal bell was ringing and the engine bell ringing, that the whistle was blown, and that a brakeman with a lighted lantern was riding the front end of the car as it entered the intersection. He testified that he was on the east side and south end of the front car, proceeding south, riding the stirrup, which was right on the corner of the box car; that he had a lighted lantern with him; that when they started back toward the main part of the train and had to cross West street the train was moving at perhaps six or seven miles per hour; that he gave the engineer the signal to slow down for the crossing, and that the train slowed down; that he looked in both directions and did not see anyone on the street; that he gave the engineer the back-up signal, which hadn't taken hold and caused the train to gain any speed until plaintiff's car showed up; that he didn't notice how fast plaintiff was coming until he got right at the crossing, at which time plaintiff was going about thirty or thirty-five miles an hour and traveling on the left-hand side of the street; that he gave the stop signal to the engineer, who recognized the signal and responded; that the witness stepped off the stirrup in the middle of the street to keep from getting hit, and hollowed and whistled as he jumped off, trying to attract plaintiff's attention. There was also evidence that the broken glass of the windshield was near the south side of West street, tending to show that the collision took place at that point; also evidence that there were marks on the pavement where plaintiff's tires had skidded for perhaps thirty feet because the brakes had been put on. Among other instructions given was No. 15, which, so far as here material, is as follows:

". . . It is further disclosed by the evidence *as testified to by several witnesses for the plaintiff,* that the bell-ringing signal was not in operation; that is, that it was not ringing. It is further disclosed from the evidence *as testified to by the plaintiff,* that he approached the crossing with some degree of caution and slowed down the speed of his automobile to about five miles an hour; that he looked and listened; that he heard no bells ringing; he heard no whistles blowing, and under those conditions and circumstances and surroundings, he drove upon the track. . . . The evidence introduced by *the plaintiff* tended to show that there was no signal or no light of any kind, or

warning upon the box car that was approaching from the north, and that there was no flagman or any other person riding thereon. *Now, under those circumstances and conditions as disclosed from the evidence, it is for you to say,* gentlemen of the jury, whether the plaintiff used that degree of caution and care and prudence that an ordinarily prudent man would have used under like circumstances, conditions and surroundings." (Italics ours.)

Appellant complains of this instruction on the ground that it tended to authorize the jury to return a verdict upon evidence offered by plaintiff when there was contradictory evidence on the same points offered by defendant. The instruction is open to that interpretation and is therefore erroneous. We have carefully read the other instructions and do not find this error counteracted by any of them. The result is there must be a new trial.

Appellant complains, also, of instruction No. 17, which we deem it unnecessary to quote. It dealt with the relative weight to be given by the jury to negative and affirmative testimony concerning a specific point. The instruction as given is contrary to the rule laid down by this court in *K. C. Ft. S. & G. Rld. Co. v. Lane,* 33 Kan. 702, 7 Pac. 587; *Weir v. Railways Co.,* 108 Kan. 610, 196 Pac. 442. It may be questioned whether the court aids a jury much in giving an instruction on this point, but if one is given it should follow the rule previously announced by this court, and it should be so used that a wrong inference be not drawn from it. (*State v. Scott,* 117 Kan. 303, syl. ¶ 9, 235 Pac. 380.)

Appellant complains of other instructions, but we deem it unnecessary to comment specifically upon them further than to say that they do not seem to point out clearly the duty of the jury with respect to finding the negligence of defendant. Naturally the first point necessary for plaintiff to establish was the negligence of defendant in the particulars alleged in his petition, and that the injury was a result therefrom. While instruction No. 15, a part of which is above quoted, was given in relation to plaintiff's contributory negligence, the testimony referred to therein and the testimony offered by defendant with respect to those points went to the question of defendant's negligence. We do not find that was made clear to the jury.

Appellant complains that some of the special questions requested were not submitted to the jury. The special questions submitted by the court embodied most of those requested by defendant and omitted none that was essential, hence there is no error in the ruling of the court on that point.

Finally it is argued by appellant that it was not definitely shown that the intersection was within the corporate limits of the city of Iola, and hence that the city ordinance referred to in the pleadings, evidence and the court's instructions should not have been considered. This point is quite devoid of any merit.

Because of the error in the instructions the judgment of the court below is reversed with directions to grant a new trial.