No. 30,791.

WILLIAM G. CARTER, *Appellee*, v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

(16 P. 2d 472.)

Opinion filed December 10, 1932.

*W. P. Waggener, J. M. Challis, O. P. May, B. P. Waggener,* all of Atchison, and *Karl M. Geddes,* of El Dorado, for the appellant.

*C. L. Aikman,* of El Dorado, *L. C. Gabbert, John Madden* and *John Madden, Jr.,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by William G. Carter against the Missouri Pacific Railroad Company to recover damages for injuries sustained by him in a collision of an automobile, in which he was riding, with a train of the defendant at a street crossing in El Dorado. The case was tried with a jury which rendered a verdict awarding plaintiff damages in the sum of $3,049 and with

their verdict made answers to a number of special questions submitted by the court. Defendant moved for judgment in its favor on the answers to the certain special questions notwithstanding the general verdict, but this motion was overruled. A motion of defendant for a new trial which had been filed by defendant was withdrawn by the permission of the court, and judgment was entered against defendant on the verdict and special findings for $3,049. Defendant appeals, insisting that the special findings disclose contributory negligence on the part of the plaintiff and entitle defendant to judgment in its favor.

It appears that the collision occurred at a point where Main street intersects the railroad. Plaintiff, traveling on Main street, approached the crossing in an automobile driven by his daughter-in-law, Viola Carter, driving at a speed of about fifteen miles per hour, while the train was traveling at a rate of twenty-five miles an hour. There was an electric signal of the railroad company at the crossing which was in operation at the time of the collision, but it was obstructed by the presence of a truck traveling in front of the automobile. A grocery building on the corner of the street near the crossing, but not on the right of way, limited the view down the track on which the train was coming, but there was an unobstructed view of the track from the automobile from different points ranging from thirty to ten feet before reaching the track. The material special findings follow:

"3. When the automobile approached the track was a view of the electric signal by the plaintiff prevented by the presence of the truck in front of the automobile? A. Yes.

"4. Was the view down the track limited by the presence of the Washburn grocery? A. Yes.

"5. Just before the car in which the plaintiff was riding was driven onto the track did he look at the electric signal to see if a train was coming? A. No.

"6. If you find that the plaintiff's view of the electric signal was obstructed by the truck while he was still in a position of safety, what, if any, effort did plaintiff make to have the automobile stop before going into a position of danger? A. None.

"7. How far down the track to the northwest has one an unobstructed view of the track when the front end of the automobile is—

(a) Ten feet from the south rail? 1,500 feet.

(b) Twenty feet from the south rail? 300 feet.

(c) Thirty feet from the south rail? 100 feet.

"8. How fast was the train going when it crossed Main street? A. Twenty-five miles per hour.

"9. How fast was the automobile going when it was thirty-five feet south of the south rail? A. Fifteen miles per hour.

"10. How far did the train run after the collision? A. One hundred seventy-five feet.

"11. Did the plaintiff as he approached the track and while still in a position of safety look northwest along the track for approaching trains? A. No.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"14. What, if any, effort did Viola Carter make to determine whether a train was approaching the crossing before she attempted to cross? A. Looked.

"15. Had Viola Carter passed over the crossing frequently before July 8? A. Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"18. If the automobile had been stopped when it was twenty feet south of the track and the plaintiff had looked to the northwest for an oncoming train, could the accident have been prevented? A. Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"20. If you find the defendant was guilty of negligence, then state specifically the act or acts of negligence that you find it was guilty of. A. Too high speed, not sufficient warning of whistle or bell.

"21. Was the electric signal operating at the time of the collision? A. Yes.

"22. Was the plaintiff riding in the car as a guest of Viola Carter? A. Yes.

"23. Was Viola Carter the agent or chauffeur of the plaintiff? A. No.

"24. In the matter of the trip to the restaurant and return, were the plaintiff and Viola Carter engaged in a joint enterprise? A. No.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"26. If the engine came to a stop west of the point where it usually stopped, then state how far west of its usual stopping point it came to a stop on this date. A. One hundred fifty feet short."

The special findings make it clear that the occupants of the automobile in driving up to and upon the railroad track failed to exercise ordinary care to avoid a collision. The electric signal which indicated the approach of a train was in operation. It appears that a truck driving in front of the automobile obscured plaintiff's view of the electric signal when they first approached the crossing, but they necessarily knew that the railroad was in front of them and that if they could not see the signal ordinary care required them to use other precautions to ascertain if they could safely cross the track. The track itself was a warning of danger to the driver and the plaintiff, and the obligation was upon them to use ordinary care to avoid the peril of colliding with a coming train, and if one means of discovering peril was not available to them other means and precautions should be taken. In *Clark v. Atchison, T. & S. F. Rly. Co.,* 127 Kan. 1, 5, 272 Pac. 128, it was said:

"Ordinary care requires that a traveler approaching a railroad crossing shall take such precaution for his safety as would be used by persons of ordinary prudence under like circumstances and conditions. In some cases it is enough to look, in other cases to look and listen, in other cases to stop as well as look and listen, and in still others he should leave his vehicle and go forward to a point where he can ascertain whether he can cross safely." (Citing many cases.)

Plaintiff and his driver had ample opportunity to know and understand the peril at the crossing. When they were twenty feet away from the track they had an unobstructed view down the track for 300 feet, and when within ten feet of the track they could see 1,500 feet. When they came in sight of the track was the time for those in the automobile to slow down and exercise care, and the greater the obstruction the greater care was required, and it is apparent if ordinary care had been exercised there would have been no collision. It has been held that where there were obstructions to view upon approaching a railroad track and no opportunity to see a coming train, the exercise of due diligence by the driver and by those in the vehicle requires them to stop the vehicle and go forward to see if there is danger in driving upon the track, and that one failing to do so is guilty of negligence as a matter of law. (*Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742, citing many cases.)

In a case involving the question of contributory negligence of a person in a motor vehicle, driven by another, which is struck by a railroad train at a crossing, where the plaintiff did nothing to warn the driver, it was said:

"If numerous previous decisions of this court have not made clear the fact that a railroad track is a warning to auto vehicle drivers of possible horrible death, and the fact that a normal guest of an auto vehicle driver, having equal opportunity with the driver to see an approaching train, and having opportunity to warn the driver in time to prevent disaster, is guilty of contributory negligence unless he uses due care for his own safety, another opinion on the subject would be ineffectual, and it is sufficient to say here the motion for judgment should have been sustained." (*Hooker v. Missouri Pac. Rld. Co.*, 134 Kan. 762, 763, 8 P. 2d 394.)

See, also, *Williams v. Electric Railroad Co.*, 102 Kan. 268, 170 Pac. 397; *Acker v. Railroad Co.*, 106 Kan. 401, 188 Pac. 419; *Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314, 282 Pac. 593; *Hartman v. Kansas City, L. & W. Rly. Co.*, 132 Kan. 182, 294 Pac. 913.

Here the plaintiff, who knew they were approaching a railroad in the automobile driven by another, failed to warn the driver or to

take any precaution for his safety. The jury found that when the automobile was approaching the railroad track and while he was in a position of safety plaintiff did not even take the precaution to look for approaching trains. It is settled that when a person, riding in an automobile with another who is driving, fails to take proper precautions for his own safety when about to cross a railroad track, he cannot recover damages when, by taking precautions, the injury he sustained might have been avoided. (*Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744; *Sharp v. Sproat*, 111 Kan. 735, 208 Pac. 613; *Ferguson v. Lang*, 126 Kan. 273, 268 Pac. 117.)

It is clear that the defendant was entitled to judgment in its favor on the findings of the jury, and therefore the judgment must be reversed and the cause remanded with direction to enter judgment for defendant.

Judgment for defendant.