No. 33,623

EMMA McCUNE, *Appellee,* v. GUY A. THOMPSON, Trustee of the Missouri Pacific Railroad Company, *Appellant.*

(75 P. 2d 294)

Opinion filed January 29, 1938.

K. M. Geddes, of El Dorado, W. P. Waggener, J. M. Challis, O. P. May and B. P. Waggener, all of Atchison, for the appellant.

C. L. Aikman, of El Dorado, and L. C. Gabbert, of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages for injuries sustained by the plaintiff when the automobile she was driving was struck by defendant's train at a township road crossing in Butler county.

The pertinent facts were chiefly these: About half a mile west of Benton there is a township road which runs north and south. This road is crossed by the Missouri Pacific railway, which runs east and west thereabout. To the north of the railway track and west of the township road there is an embankment which shuts off a westward view of the railway from a traveler on the public road until he gets close to the track.

On June 3, 1936, this plaintiff, who resides somewhere south of this railway crossing, had been visiting a relative who resided a short distance north of the railway. About 4 o'clock in the afternoon she started for home. In the automobile with plaintiff were her mother, aged 81, her brother, 56, her sister, 44, and two ten-year-old girls. When plaintiff's automobile, traveling southward, reached the crossing it was struck by defendant's eastbound train, with fatal results to several of the occupants of the automobile and with various and sundry injuries to this plaintiff.

Plaintiff sued for damages, charging defendant with negligence in various respects. Defendant pleaded the general issue and contributory negligence.

The jury returned a verdict for plaintiff in the sum of $2,075, which included $487.50 to plaintiff's husband for loss of plaintiff's services due to her injuries. Accompanying the general verdict were special findings which require careful examination. These read:

"Q. (1) Did Emma McCune look to her right for an approaching train before driving upon the defendant's track? A. Yes.

"Q. (2) If you answer question 1 in the affirmative, then state at what distance or distances north of the north rail she was when she looked. A. 30 feet.

"Q. (3) At what rate of speed did the automobile approach the crossing? A. 8 miles per hour.

"Q. (4) At what rate of speed did the train approach the crossing? A. 40 miles per hour.

"Q. (5) Did the plaintiff stop her automobile before driving upon the crossing? A. Yes.

"Q. (6) If you answer question 5 in the affirmative, then state how far north of the north rail the automobile was stopped. A. Approximately 30 feet.

"Q. (7) If you find that the plaintiff stopped her automobile north of the north rail, then state how far west of the crossing an approaching train could have been seen from the point where she stopped the automobile. A. 100 feet.

"Q. (8) How far west of the crossing could an approaching train have been seen by the plaintiff— (a) When she was 25 feet north of the north rail? A. Approximately 300 feet.

"(b) When she was 20 feet north of the north rail? A. Approximately 500 feet.

"(c) When she was 16 feet north of the north rail? A. Approximately 1,500 feet.

"(d) When she was 12 feet north of the north rail? A. Approximately 3,900 feet.

"(e) When the front bumper of her car was 10 feet north of the north end of the railway ties? A. Approximately 1,000 feet.

"Q. (9) If you find the defendant was guilty of negligence, then state fully, definitely and specifically of what such negligence consisted. A. Embankments and weeds.

"Q. (10) Do you find the plaintiff was guilty of contributory negligence? A. None."

All the usual post-trial motions were presented and overruled by the court, and judgment was entered for plaintiff.

Defendant appeals, contending chiefly that the special findings of the jury convicted the plaintiff of contributory negligence which barred a recovery in her behalf against the defendant.

Going directly to this point, it has long been settled law in this state, as throughout this country generally, that a railway track is itself a warning of danger. (*Bazzell v. Atchison, T. & S. F. Rly. Co.*, 134 Kan. 272, 5 P. 2d 804.) A person about to cross a railway track must first assure himself that no train is approaching and that it is safe to cross. If he attempts to cross without first making sure that he can safely do so, he is guilty of negligence, and he will not be permitted to penalize the railway company if an accident occurs. Our own reports are laden with decisions to this effect. The older cases were collated by the late Mr. Justice Marshall in *Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023, and *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742. In the latter case this court said:

"The driver of an automobile cannot recover damages for injury to himself and his machine where he approaches a railway track at a place at which he cannot see along the track until his automobile is in a place where it will be

struck by a passing engine or cars, and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming." (Syl.)

*Bunton v. Railway Co.*, 100 Kan. 165, 168, 163 Pac. 801, was an action by a husband for the death of his wife, who was killed in a railway-crossing accident. The jury returned a verdict for plaintiff and answered several special questions, one of which was that plaintiff and wife had exercised ordinary care and reasonable prudence in crossing the railroad track at the time and place and in the circumstances. Such a finding, of course, was equivalent to an acquittal of plaintiff and his wife of contributory negligence. But another special finding showed that at 20 feet from the railway track the oncoming train could have been seen for a quarter of a mile. That highly significant fact compelled a reversal of the judgment. In the opinion the court said:

"The duty to keep a sharp lookout for trains at a public crossing has often been expounded by this court. A railroad crossing is itself a danger signal. One who proposes to cross a railroad must look and listen. It is not required, in this state, that a person must necessarily stop, in order to look and listen, unless the surroundings and circumstances demand that unusual prudence. If the circumstances do demand such prudence, then there is a duty to stop, look, and listen. (*Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742.) While the plaintiff testified that he did keep a sharp lookout, the jury's special findings are that at twenty feet and at thirty feet from the crossing there was nothing to prevent the plaintiff from seeing the oncoming train. This in effect is a finding that he did not look to see if a train was approaching." (p. 168.)

In the present case the jury found that plaintiff stopped her automobile when she was 30 feet from the railway track, at which distance she could not have seen a train until it was only 100 feet from the crossing. Certainly nothing she could learn about the possibility of an approaching train within that short distance gave her any assurance that it was safe to cross the track.

The jury found that the defendant was negligent in permitting "embankment and weeds" (finding 9) in close proximity to the crossing which shut off plaintiff's view of the oncoming train at a distance of 30 feet from the track. That plaintiff looked for a train at that distance—where she could only see 100 feet westward along the railway—was not enough. It did no good to look where she could not see. In *Williams v. Electric Railroad Co.*, 102 Kan. 268, 170 Pac. 397, which was another crossing case, the jury returned a

verdict for plaintiff and answered several special questions, one of which read:

"'As the plaintiff approached the crossing in question what, if anything, was there to prevent him seeing or hearing the approaching car in time to stop his automobile before it passed on to the north rail of the track, if it did? A. Bank and weeds.'" (p. 270.)

On appeal the fact that the plaintiff's view was obstructed was considered. The court said:

"It is not required in this state in all cases that one about to cross a railway track must stop, look and listen to assure himself that he can cross in safety; but where obstructions to his view prevent him from otherwise ascertaining the fact of safety, then it is his duty to stop to make sure of his safety before crossing.

". . . A driver of an automobile cannot recover damages for injury to himself and his machine in a collision with a trolley car occasioned by the driver's attempt to cross a railway track .without stopping to ascertain that he could ·cross in safety, when, owing to obstructions to his view, that fact could not have been otherwise ascertained." (Syl. ¶¶ 2, 3.)

In *Rathbone v. Railway Co.*, 113 Kan. 257, 214 Pac. 109, a woman riding with her son was killed at a railway crossing where a view of the oncoming train was obstructed. This. court said:

"But notwithstanding defendant's negligence in the way it maintained the crossing, it was incumbent upon Emmett and Bessie Rathbone, before they attempted to cross the railway track where their vision was shut off by obstructions, to ascertain positively that no train was approaching and that they could safely cross. This they did not do. . . . It is settled law in this state that it is negligence to attempt to cross a railroad track ahead of a speeding train, even in a case where but for a defective crossing the party making such foolhardy attempt would have escaped unscathed by a few ticks of the clock." (p. 259.)

In another railway crossing case, *Brim v. Atchison, T. & S. F. Rly. Co.*, 136 Kan. 159, 12 P. 2d 715, the jury specially found (finding 10) that immediately before driving on the railway track the deceased had looked and listened. In the opinion it was said:

"Counsel for appellee direct our attention to finding No. 10, which declares that Brim looked and listened just before he did attempt to drive across the track. To that there are two effective answers: . . . second, if he looked at any point where it would have done any good to look, he must have seen the approaching train (*Young v. Railway Co.*, 57 Kan. 144, 45 Pac. 583; *Pritchard v. Railway Co.*, 99 Kan. 600, 162 Pac. 315; *Crane v. Railway Co.*, 89 Kan. 472, 131 Pac. 1188; *Gaffney v. Railway Co.*, 107 Kan. 486, 192 Pac. 736); and if he looked at a point where he could not see, such a futile act would not discharge his duty to himself as a man of ordinary prudence (*C. K. & W. Rld. Co. v. Fisher*, 49 Kan. 460, 482, 483, 30 Pac. 462) to ascertain

whether a train was approaching ere he ventured to cross that place of danger. In *Railway Co. v. Wheeler,* 80 Kan. 187, 191, 101 Pac. 1001, it was said:

"'It is not enough for a traveler to look where an approaching train cannot be seen or to listen when it cannot be heard.' Nor will it suffice that one has looked some distance away from the crossing when a view on a closer approach would have revealed the danger. (*Railroad Co. v. Holland,* 60 Kan. 209; *Railroad Co. v. Entsminger,* 76 Kan. 746.) Where by reason of obstructions or noises an approaching traveler cannot see or hear a coming train, it may be necessary for him to stop or take some other suitable precaution to ascertain whether there is a train in dangerous proximity. (*A. T. & S.·F. Rld. Co. v. Hague,* 54 Kan. 284.) In short, he must exercise care proportionate to the perils of the place.'" (p. 163.)

In *Cooper v. Railway Co.,* 117 Kan. 703, 232 Pac. 1024, it was held:

"Where one is about to cross a railway track and obstructions to his sight and hearing prevent him from assuring himself that no train is approaching, it is negligence for him to risk his life by attempting to cross without otherwise ascertaining that it is safe to do so." (Syl. ¶ 2.)

Recent cases governed by this same mixed principle of law and fact are: *Hartman v. Kansas City, L. & W. Rly. Co.,* 132 Kan. 182, 185, 294 Pac. 913; *Vance v. Union Pac. Rld. Co.,* 133 Kan. 11, 14, 298 Pac. 764; *Dennis v. Kansas City, K. V. & W. Rly. Co.,* 133 Kan. 214, 219, 220, 299 Pac. 941; *Kindig v. Atchison, T. & S. F. Rly. Co.,* 133 Kan. 459, 461, 2 P. 2d 75; *Carter v. Missouri Pac. Rld. Co.,* 136 Kan. 526, 16 P. 2d 472; *Pagan v. Lowden,* 145 Kan. 513, 518, 519, 66 P. 2d 567.

In the case at bar, when plaintiff was 20 feet from the rail she would have had a view of the track for a distance of 500 feet in the direction from which the train was coming. At 16 feet she would have had a view for a distance of 1,500 feet. At 12 feet she could have seen the train coming at any distance within 3,900 feet. Plaintiff's testimony was that after stopping at 30 feet from the track— and looking for a train where she could not see because of the embankment and weeds—"I shifted my gears into low and started on." The jury found that the automobile approached the crossing at 8 miles per hour. The jury's special findings in response to question No. 8 demonstrate beyond cavil that there was nothing to prevent plaintiff from seeing the train at sufficient distance from the track to have stopped her automobile, which was traveling in low gear, and thus averted this accident to herself and the other tragic consequences which ensued.

We do not overlook the cases cited by appellee. In none of them are there special findings of the jury such as No. 8 set out above,

and consequently they lend no support to the case at bar. Here the plaintiff's contributory negligence is established by the special findings, and the result is the judgment must be reversed with directions to enter judgment for defendant.

Reversed.