No. 33,969

H. A. DICKERSON, *Appellee,* v. MISSOURI-KANSAS-TEXAS RAILROAD
COMPANY, *Appellant.*

(87 P. 2d 585)

 Opinion
filed March 4, 1939. 

*W. W. Brown,* of Parsons, and *R. E. Coughlin,* of Paola, for the appellant.
*Ben F. Winchel,* of Osawatomie, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was another railroad-crossing accident case.
Plaintiff was a rural mail carrier, who made his daily rounds in a
Ford automobile. On his route was a public road which ran east
and west about three miles northeast of Osawatomie. The main
line of the Missouri-Kansas-Texas Railroad Company, which runs
north and south thereabout, crosses the public road at right angles.
In July, 1937, the defendant had permitted weeds to grow to a
height of six or seven feet, to within six feet from the rails. These
weeds also narrowed the traveled portion of the public road, so
that when his car was in the center of the road plaintiff could touch
them with his left hand. The railway track coming from the north
is straight for about a mile. For part of that distance it runs
through a shallow cut on a slight decline towards the crossing. On
the sides of this cut were embankments, the tops of which were ten
or twelve feet above the rails, and weeds and tall grass grew thereon.

On the morning of July 19, 1937, plaintiff set out as usual on the
mail route he had been traveling regularly for about twenty-eight
years. His automobile was a two-year-old Ford sedan. It had
rained the night before and the road was muddy and slippery, so
that plaintiff had to shift gears frequently as he proceeded. He was
traveling eastward as he approached the railway crossing. Owing
to the weeds growing by the roadside and on the embankments in-

side the right of way he could not see a train approaching from the north, but at a distance of sixty feet west of the crossing he stopped his car. He testified:

"My hearing [is] good, my engine was running. I looked for a train, but I did not see anything and I did not hear anything. I did not see the train because I could not see it. After I stopped and looked and listened, I shifted gears; my engine was already going. The process of stopping and shifting gears required about twenty seconds. . . . I did not see a train approaching from the north until I got out where I could see it. I was not over two and a half feet from the track when I passed the weeds and saw the passenger train approaching. The engineer blew a warning signal about the same time that I saw the train. When I came out from behind the weeds I saw this passenger train coming, and when I passed the weeds I saw the train coming right at me, and it confused me. I guess that I started to stop before I got on the track and killed my engine, and I was in danger and I left the car and the mail and all, and got into the clear. The engine of the train hit the front end of my automobile. The automobile was not on the track, but the engine evidently hit the front end and threw it into the cattle guard and upset it."

On cross-examination plaintiff testified:

"I knew the location of all the obstructions and knew all about the crossing that anybody could know. I knew where the cut was, and knew where the embankments were, and I knew that it rained the night before, and I knew that the road was slippery. The car had pretty good traction. The bottom of the tracks were a little slick. The roads were pretty slick; that was why I was not driving fast. . . .

"Q. Now, at that point you stopped, at sixty feet back there, or wherever you stopped, what did you do? Did you look? A. Yes, I looked, but couldn't see anything.

"Q. Which way did you look? A. I couldn't look, only straight ahead.

"Q. You knew you couldn't look when you looked, didn't you? A. I didn't expect to see anything.

"Q. You knew that, when you stopped, didn't you? A. I knew I couldn't see up the tracks, yes, sir.

". . . wherever I stopped, whether thirty or sixty or twenty-five feet, I could not see a thing. I could not see an approaching train if there had been one approaching. . . . The weeds were growing within the limits of the highway. . . . As I moved along the highway toward the railroad crossing I could reach out of the left door of my car and touch the weeds when I was in the middle of the road. These weeds were located in the highway proper, close to the crossing. . . . They were south of the A-frame and the cattle guard. . . . They extended twenty to twenty-five feet back westward from the track, in the highway, and between that and the right-of-way fence on the north. The obstruction commenced in the neighborhood of thirty feet west of the track."

His testimony continued:

"I saw the weeds when they started to grow in the spring, and every day as they grew a little bit. . . . I knew that I could not see a train, and realized that situation at the time. I shifted gears after stopping, and just barely moved out, about two miles, or three or four miles, an hour. . . . At the speed I was going I could stop the car practically right now. . . . I could stop it in approximately three feet."

He further testified:

"This was the main line of the Missouri-Kansas-Texas railroad. Fast trains run on it. And it was train time at that crossing when I arrived at the crossing. I was familiar with the time and with the crossing and knew there was a passenger train at that time, but I did not often see it, for the reason that I usually passed over the crossing earlier. On that day I was late.

. . . . . . . . . . . . . . .

"I stopped as soon as I could see the train. When I saw it, it was coming down from the north. I saw the train when I eased out from behind the weeds. . . . My car was within a foot and a half of the rail. I became confused. The engineer saw me and pulled the whistle and set the air. The wheels were grinding. I gave him one look and got out . . . when I saw the train, which was then several hundred feet up the road. When the collision took place I was about twenty feet from the west rail of the track."

Plaintiff called a number of witnesses, whose testimony corroborated and supplemented his own. Defendant's demurrer to plaintiff's evidence was overruled, following which it called as a witness its civil engineer, who gave figures and distances on matters more or less pertinent, but not controverted. The railway engineer in charge of the train testified that he blew the whistle at the whistling post a quarter of a mile north of the crossing. The brakeman, fireman and conductor also gave testimony to the same effect.

The jury returned a verdict in favor of plaintiff in the sum of $400 for damages to his automobile, and answered certain special questions, some of which read:

"2. At what rate of speed did plaintiff drive his automobile toward the point of collision from a point twenty-five feet distant therefrom? A. Five miles per hour.

"3. In what distance could plaintiff have brought his automobile to a stop as he was traveling from a point twenty-five feet distant from the point of collision up to the point of collision, if he had diligently attempted to stop? A. Three feet.

. . . . . . . . . . . . . . .

"6. If plaintiff had stopped his automobile at a point when it was in a place of safety and the front end was distant approximately three feet or more from the west rail of the track, could he have seen the train approach-

ing from the north for more than 1,000 feet, had he carefully looked? A. No.

"8. From the time plaintiff got within fifteen feet of the point of collision until he drove to the railroad track, what, if anything, was there to prevent his ascertaining the approach of the defendant's train, if, before going to the track, he had stopped and carefully looked along the track in the direction from which the train was then coming? A. Weeds.

"9. If you find for the plaintiff, state on what grounds of negligence you base your verdict. A. Failure to blow whistle at proper time and obstruction of view by weeds."

Judgment for plaintiff was entered on the verdict, and defendant appeals, assigning various errors, the most important one being the overruling of its demurrer to plaintiff's evidence. That demurrer was predicated on our oft-repeated rule of law that a man about to cross a railway track on a public road must assure himself that it is safe to do so, and if his own evidence shows that he did not take those precautions, which common prudence and the law require, he has himself to blame if he or his property is injured or damaged by a railway train, and his contributory negligence thus so clearly established will bar his recovery of damages as a matter of law. And this rule applies although the railway company and its train crew may have been negligent also.

There is a plethora of decisions in the law books to this effect. The late Mr. Justice Marshall collected all our earlier cases and cited them in *Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023, and in *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742, in the hope that the perennial stream of ill-founded damage suits about railway crossing accidents might be abated. Mayhap those decisions and the marshalling of the formidable lists of such decisions which preceded them did lessen their number to some extent during the next twenty years, but still they come and not infrequently. *Vide* the recent one of *McCune v. Thompson*, 147 Kan. 57, 75 P. 2d 294.

There is nothing new to write touching the law of these typical crossing cases; but we have no intention of intimating that damages are never recoverable against a railway company for injuries sustained to person or property at a railway crossing over a public road. (Vide *Torgeson v. Missouri-K.-T. Rld. Co.*, 124 Kan. 798, 262 Pac. 564; and *Pokora v. Wabash Ry. Co.*, 292 U. S. 98.) In *Brim v. Atchison, T. & S. F. Rly. Co.*, 136 Kan. 159, 12 P. 2d 715, we said:

"It cannot be laid down dogmatically that if a person gets injured or killed at a railway crossing in the open country such mishap or fatality could in no

event happen but for his own contributory negligence, and of course every crossing-accident case must be decided upon its own peculiar facts." (p. 165.)

But a careful perusal of plaintiff's evidence in the instant case reveals nothing by which it can be distinguished in principle from the rule announced in the Wehe case, *supra*, which reads:

"The driver of an automobile cannot recover damages for injury to himself and his machine, where he approaches a railway track at a place at which he cannot see along the track until his automobile is in a place where it will be struck by a passing engine or cars, and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming." (Syl.)

In *Bunton v. Railway Co.*, 100 Kan. 165, 163 Pac. 801, another crossing-accident case, it was said:

"The duty to keep a sharp lookout for trains at a public crossing has often been expounded by this court. A railroad crossing is itself a danger signal. One who proposes to cross a railroad must look and listen. It is not required, in this state, that a person must necessarily stop, in order to look and listen, unless the surroundings and circumstances demand that unusual prudence. If the circumstances do demand such prudence, then there is a duty to stop, look and listen." (p. 168.)

In *Brim v. Atchison, T. & S. F. Rly. Co.*, supra, the syllabus, in part, reads:

"Where a person was killed in a collision between his loaded motor truck and defendant's railway train at a railway crossing over a township road, and defendant's negligence as found by the jury was its failure to maintain the crossing in accordance with the standard prescribed by the statute (R. S. 66-227), it is held that when the deceased drove onto the crossing, with which he was familiar, without taking due precaution to ascertain that no train was approaching to imperil his safety, he committed an act of contributory negligence which barred a recovery of damages for the negligence of defendant." (Syl. ¶ 2.)

In the opinion in that case we said:

"Counsel for appellee direct our attention to finding No. 10, which declares that Brim looked and listened just before he did attempt to drive across the track . . . [but] . . . if he looked at a point where he could not see, such a futile act would not discharge his duty to himself as a man of ordinary prudence (*C. K. & W. Rld. Co. v. Fisher*, 49 Kan. 460, 482, 483, 30 Pac. 462) to ascertain whether a train was approaching ere he ventured to cross that place of danger." (p. 163.)

In *Clark v. Atchison, T. & S. F. Rly. Co.*, 127 Kan. 1, 5, 272 Pac. 128, the late Mr. Chief Justice Johnston discussed this same threadbare subject. He said:

"Ordinary care requires that a traveler approaching a railroad crossing shall take such precaution for his safety as would be used by persons of ordinary prudence under like circumstances and conditions. In some cases it is enough to look, in other cases to look and listen, in other cases to stop as well as look and listen, and in still others he should leave his vehicle and go forward to a point where he can ascertain whether he can cross safely. . . (citations) . . . It was not due diligence for plaintiff to look and listen where he could not see or hear the train. He failed to stop, but drove on the track without taking other precautions than to slow down and look and listen, and knowing of the obstructions and that the ordinary means for ascertaining the perils of the crossing were not available, he should have stopped his team and vehicle and gone forward to a point where he could have had a view of the track and of the coming train. If he had done so he would have had a view of the track for a mile east of the crossing and could thus have avoided the collision and the injury suffered."

In the instant case, plaintiff realized he had not taken sufficient precautions to assure himself he could cross the railway in safety. Indeed, he did nothing which could give himself that assurance. Nor was there anything except the slight inconvenience to himself of getting out of his car and going a step or two forward to ascertain whether or not a train was coming. And according to his own testimony he would have had ample time to do that, since he did have time, after his car was within a foot and a half of the railway track, to kill his engine, get out of his car and go back on foot to a distance of twenty feet from the track and watch the demolition of his car from that point of safety. This situation is vastly different from the one which confronted the plaintiff in the Torgeson case. There a view of the railway track in the direction from which the train was coming was so greatly shortened by a curve in the track and a hill that the train could only have been seen when it was but 203 feet away if the observer had been on the crossing itself. Here an observer on the crossing could have seen a train for a distance of a mile away; and while this train was traveling at a speed of fifty miles an hour, there would not have been the slightest difficulty in avoiding this accident if plaintiff had taken the simplest of precautions to ascertain whether he could safely cross the track at the time he undertook to do so. Moreover, he could not have failed to cross safely in the instant case, irrespective of his failure in his duty to himself, if he had not killed his engine. In view of plaintiff's own testimony, for the candor of which he is to be commended, this court is compelled to hold that his contributory negligence was so completely established that de-

fendant's demurrer to plaintiff's evidence should have been sustained or a directed verdict entered in defendant's behalf. (*Moler v. Railway Co.*, 101 Kan. 280, 166 Pac. 488.)

In view of this conclusion it is unnecessary to discuss the trial court's failure to instruct the jury on the comparative probative force of the negative and positive testimony on the controverted issue of fact—whether the engine whistle had been blown at the whistling post. But we may remark that for half a century it has been the approved practice to give an appropriate instruction on that controverted issue in damage cases against railroads. (*Mo. Pac. Rly. Co. v. Pierce*, 39 Kan. 391, 18 Pac. 305; *Railroad Co. v. Brock*, 69 Kan. 448, 77 Pac. 86; *Weir v. Railways Co.*, 108 Kan. 610, 196 Pac. 442; *Kindig v. Atchison, T. & S. F. Rly. Co.*, 133 Kan. 459, 464, 1 P. 2d 75.)

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.