### No. 25,017.

### J. C. PETERSON, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

NEGLIGENCE—*Railroad Crossing Accident—Contributory Negligence of Driver of Truck Fact for Jury.* Record of an action for damages for injuries sustained in a railroad crossing accident examined, and held that plaintiff's contributory negligence was not so clearly established as to make it a question of law, and that the record discloses no error justifying a reversal of the judgment.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL; judge. Opinion filed April 5, 1924. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*John W. Adams, William J. Wertz,* and *George Adams,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for personal injuries sustained by the plaintiff at a street crossing when a two-ton motor truck which he was driving was struck by one of defendant's trains. The plaintiff recovered and defendant appeals.

The collision occurred at the Lincoln street crossing of the railroad in the city of Wichita. Lincoln street extends east and west and the railroad north and south. Two tracks cross the street— the main track and a sidetrack—the sidetrack being on the east. The testimony, among other things, showed that the plaintiff approached the crossing from the east; that, when about eight feet from the switch track he stopped his truck, raised up in the seat,

listened, looked both to the north and to the south, and did not see or hear any train; that the view to the north was obstructed by a string of box cars on the defendant's east (side) track; that the street was not paved; that the main traveled portion was well to the south side of the street; that the cars extended out into and over half the street from the north; that the south car of the string was about twelve feet north of this traveled way; that the cars obstructed plaintiff's view to the north; that about half an hour before the collision these same box cars had obstructed the view of another party of a train coming from the north—one who crossed in the same place; that the cars were there at least an hour after the collision; that, at the crossing, there was what is commonly known as a "wig-wag" for the purpose of signaling a warning of approaching trains; that a wig-wag is a red disc about two feet in diameter; has a light in it and when it swings back and forth the light works off and on; that it has a round bell about twelve inches in diameter and while the wig-wag is swinging the bell rings; that this wig-wag had been out of repair for some time and was not operating the day of the accident; that within a week after the collision it was taken out and a new one installed.

The plaintiff testified:

"I approached from the east to the west up to this string of box cars. The wig-wag was not ringing that day. There was no alarm given or any signal whatever given by it. When I stopped my truck just east of the track I shifted the gears into intermediate and started my car slowly and drove up on the track. The distance between the switch track here and this main track . . . is just twelve feet. When I first saw this train coming I had just got past the box car. The front wheels of my truck were going over clear on the track, on the west Santa Fe track. The car looked to be about fifteen feet of me; I was looking all the time. . . . There was no bell rung on the engine or any signal given or alarm before I crossed the track or before he struck. . . . Before I could have backed off the track I would have had to stop my automobile and then back. I did not have time to do that. My automobile was running at the time I reached the west rail of the main track about three or four miles an hour. I kept looking and listening during the time from the time I stopped eight feet east of the switch track upon which these cars stood, up to the time I got out so I could see the car coming from the north yard. I did not hear or see anything. . . . It would have been impossible to stop or get either way."

Another witness testified:

"I think I would have heard if they had rung bells or whistles or the bell on the train. I saw the collision occur."

Another witness testified:

"I was down at the point of collision on the 30th day of September, 1920. I know that crossing. I noticed that the wig-wag was not working. I noticed the box cars on the east switch-track there. The view was obstructed from seeing any train coming from the north when you were going west. The motor truck after the accident was about 80 or 100 feet south of the crossing. I was at the point of the accident about one hour. While I was there a train passed south and no gong rang and one passed north and there was no gong rang."

Among the questions submitted to the jury and answers given were these:

"Q. 1. Did the plaintiff stop his motor truck and look and listen for a train or car that might be approaching on the defendant's railroad track at a point about eight feet east of the defendant's switch track or service track, just before the collision?  A. Yes.

"Q. 2. Was there any point east of the main line track that the plaintiff could see the approaching engine and tender and car, until the front end of his motor truck had reached a point two to four feet east of the main line track?  A. No.

"Q. 3. Did the plaintiff continually look and listen for approaching engines or cars upon the defendant's track before attempting to cross the same?  A. Yes.

"Q. 4. Was there anything that the plaintiff could have done to avoid injury to himself after he saw the approach of the defendant's tender and engine and car, backing southward just before the collision?  A. No."

The jury found also that the engine, at the time of the collision, was going at a speed of six or seven miles an hour; the truck about four miles per hour; that the plaintiff, in approaching the railroad, stopped and looked and listened for approaching cars when about twenty to thirty feet east of the track on which the collision occurred; that the negligence of the defendant consisted in failing to keep the wig-wag in repair, and in setting the cars in the street.

The defendant contends that "the court should have taken the case from the jury and decided, as a matter of law, that the plaintiff was guilty of contributory negligence"; that it was not negligence on the part of the defendant to leave the box cars in the street; that it was the plaintiff's duty to stop his truck, get down and go forward until he was beyond the box cars to see whether any train might be approaching; that, inasmuch as he could not see the approaching train on account of the cars standing on the switch, he was guilty of contributory negligence in not leaving his truck and going forward for the purpose of ascertaining if the way was clear. In support of this contention it quotes as follows from various cases

to show that the cars were left on the sidetrack in the ordinary course of its business.

*Chicago B. & Q. R. R. Co. v. Roberts,* (Neb.) 91 N. W. 707, 708.

"The cars were left upon the side track in the ordinary course of the company's business, in order to fill them at the elevator. The fact that they partially obstructed the view of persons passing over the crossing does not of itself render the company liable for accidents occurring there, but merely imposed a duty of greater care both upon the company and upon those who use the highway. *Railway Co. v. Williams,* 56 Kan. 333, 43 Pac. 246; *Railroad Co. v. Nelson,* 59 Ill. App. 308; *Haas v. Railroad Co.,* 47 Mich. 401; *Improvement Co. v. Stead,* 95 U. S. 161, 24 L. ed. 403. Nor is it material that one of the cars may have projected over the line of the highway, though not upon the traveled road. No doubt, the public are entitled to the full width of the highway as established. While a railroad company may properly leave its cars standing in the highway at a crossing for short periods, when necessary in the reasonable conduct of its business, to leave such cars in or upon the highway longer than is needful for such purpose is negligence. *Great Western R. Co. of 1859 v. City of Decatur,* 33 Ill. 382. But this circumstance of itself would not suffice to make the company responsible for all mishaps taking place at the crossing. In order to hold the company, it must appear that the negligence in leaving the car in the public road was the proximate cause of the injury. *Railway Co. v. Talbot,* 48 Neb. 627."

*Nashville C. & St. L. R. Co. v. Witherspoon,* 78 S. W. 1052, 112 Tenn. 128:

"A railroad company may use its right of way in any lawful manner, though the view of travelers is thereby obstructed, but it is required to adopt all precautions necessary to prevent such obstructions from becoming dangerous." (Headnote, ¶ 1.)

*Guggenheim v. Lake Shore R. Co.,* 33 N. W. 161, 66 Mich. 150:

"While a railroad company is not guilty of negligence in leaving its freight cars standing on a side track near a street crossing, yet when they are so placed as to cut off the view of approaching trains, and make it more difficult for persons going over the tracks to see the approach of trains, such placing of cars imposes upon it the additional duty of giving such additional warning as the danger thus increased may require." (Headnote, ¶ 6.)

We think the reasoning of the cited cases does not sustain the defendant's contention. It was a question for the jury whether under all the circumstances it was reasonable for the defendant to leave the cars so long in the street where they obscured the view of those finding it necessary to use the crossing. Leaving the cars in such a position in the highway for so long a time cannot be said, as a matter of law, to have been reasonable. Nor can it be said, as a matter of law, that the defendant adopted greater or all reasonable

Peterson v. Railway Co.

precautions necessary to prevent the obstruction from becoming dangerous. Whether the plaintiff did all that a prudent man would do considering all the circumstances, or whether he was guilty of contributory negligence was a question for the jury.

In *Long v. Railroad Co.*, 114 Kan. 40, 216 Pac. 1079, it was said:

"The court cannot say as a matter of law that one driving a motor truck across a railroad track is guilty of such contributory negligence as will bar his recovery where he stops from six to twelve feet from the track and looks each way for approaching trains, does not see any, and then starts slowly across the track, but is struck by a train, and is injured. Under such circumstances, contributory negligence is a question for determination by the jury." (Syl. ¶ 2.)

In *Beckman v. Hines*, 279 Fed. 241, it was said:

"A person driving an automobile on a highway is not bound as a matter of law to actually stop before going upon a railroad crossing, but whether it was negligence to fail to do so is a question of fact for the jury." (Syl.)

In the opinion it was said:

"It was clearly within the jury's province to find that decedent was in the exercise of due care in making the crossing. It cannot be said, as matter of law, that there was any obligation on decedent's part to actually stop his car. That was at most a question of fact for the jury. [Citing] *L. E. & W. Ry. Co. v. Schneider,* [C. C. A. 6] 257 Fed. 675, 678; 168 C. C. A. 625; *Begèrt v. Payne,* [C. C. A. 6] 274 Fed. 784, 790, 791." (245, see, also, *Stamps v. Railroad Co.,* 114 Kan. 477, 218 Pac. 1115; *Bollinger v. Railway Co.,* 113 Kan. 124, 213 Pac. 644; *Bollinger v. Railway Co.,* 114 Kan. 669, 220 Pac. 274; *Scott v. Railroad Co.,* 113 Kan. 477, 215 Pac. 280; *White v. So. Pac. Co.,* [Cal.] 54 Pac. 956.)

Complaint is made of certain of the instructions. Considered in connection with the general charge to the jury, they were not improper. We find no error.

The judgment is affirmed.

DAWSON, J. (dissenting): I am unable to distinguish this case from *Williams v. Electric Railroad Co.*, 102 Kan. 268, 170 Pac. 397, and kindred cases where the driver's contributory negligence in driving across a railway track without assuring himself that it was safe to do so barred recovery notwithstanding the negligence of the railway company. I therefore dissent.