No. 27,750.

WILLIAM TORGESON, *Appellee*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant.*

(262 Pac. 564.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Accident at Crossing—Contributory Negligence—Question for Jury.* In an action for damages for personal injuries received in a railroad-crossing casualty the question of plaintiff's contributory negligence in view of the facts disclosed by the record was a question for the jury.

2. SAME—*Accident at Crossing—Tests Tending to Show Safest Way to Cross Admissible.* Testimony of tests made tending to show the safest way for a traveler on the highway to negotiate the railroad crossing was properly received.

3. PLEADING — *Verification — Pleading Relating to Written Instrument.* One injured in a railroad-crossing casualty later signed a writing purporting to state his view of how the casualty occurred. When he sued for damages this writing was set forth as a defense. *Held,* this did not convert the action or defense into one founded on a written instrument within the meaning of R. S. 60-729. It was proper, if the facts warranted it, for plaintiff to file a reply in the nature of a confession and avoidance to such defense so pleaded.

Appeal from Geary district court; CASSIUS M. CLARK, judge. Opinion filed January 7, 1928. Affirmed.

*W. W. Brown, C. E. Pile,* both of Parsons, and *U. S. Weary,* of Junction City, for the appellant.

*James V. Humphrey, Arthur S. Humphrey,* both of Junction City, and *Henry Torgeson,* of Council Grove, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for personal injuries sustained in a railroad-crossing casualty alleged to have been caused by the negligence of defendant. The jury answered special questions and returned a general verdict for plaintiff. Defendant has

Appeal and Error, 4 C. J. p. 853 n. 59. Pleading, 31 Cyc. p. 529 n. 22. Railroads, 33 Cyc. 981 n. 81, 1000 n. 88, 1011 n. 34, 1074 n. 19, 1098 n. 97, 1111 n. 70, 1119 n. 1; 22 R. C. L. 1027.

appealed and has argued many points. The real question presented is, Was plaintiff guilty of contributory negligence as a matter of law?

The facts are substantially these: Defendant operates a line of railroad from Junction City south and east through Geary, Morris and other counties. Near the south part of Geary county it intersects a township highway, commonly called the Clark Creek road. From its southerly direction this highway approaches the intersection on an angle twenty-six degrees thirty minutes west of south. It curves on the intersection, leaving it at an angle twenty-eight degrees west of north. The railroad crosses the intersection from northwest to southeast. Just northwest of the intersection it curves around a hill to the west. Southwest of the intersection, beginning a few feet from the railroad track and a short distance west of the highway, there is a natural hill about forty feet high, with steep slopes, especially toward the railroad. Nearly a mile southeast of the intersection is the station of Skiddy. About three miles northwest of the intersection is the station of Olson. The railroad track from Olson to Skiddy is on a down grade of 1.2 per cent. A train started or in motion at Olson will run down this grade on its own momentum without steam power; in fact, it is necessary to apply the brakes occasionally to keep it from running too fast. The maximum safety speed for a train down this grade, considering the curve and the condition of the track, is twenty-seven miles per hour. One approaching this crossing from the south could not see very far up this track to the northwest because of this hill. If he had stopped his car seven feet from the south rail he could not have seen a train on the track approaching the intersection more than 203 feet away. One standing directly in the center of the track at the intersection would be able to see a train approaching from the northwest about 450 feet, and from a point in the highway 35 feet north of the crossing a man standing could see a train approaching from the northwest 800 feet. This was the farthest distance it was possible to see the train from any point on the highway on or near the intersection. At 290 feet west of the intersection is the whistling post for the station of Skiddy, and 1,150 feet west of the intersection is the whistling post for the highway crossing. At the intersection the railroad grade is about six feet higher than the level of the highway. The highway had not been constructed level with the railroad for the

distance and in the manner required by the statute. (R. S. 66-227.) There was a grade on the highway to the track of 7.7 per cent from the south side, and on the north of 8 per cent. Plaintiff resided about four miles south of the intersection on a farm, which he and other members of his family operated. He had been a school teacher for many years, and in the fall of 1925 was teaching school in Geary county about a mile north of the intersection in question. He drove from his home to the school and back each day in a Ford touring car. He had taught this school the year before. For about a year and a half prior to the casualty he had crossed the railroad at this intersection twice a day most of the time when school was in session, and was thoroughly familiar with the crossing. The day of the casualty was clear and there was no wind. Plaintiff approached the intersection from the south. As he approached the tracks he looked to his right for a train and saw none. When his car was within about seven feet of the south rail—he had slowed almost to a stop—he looked to the northwest along the track for a train and could see none, and listened and could hear none. He then proceeded to drive across the track, but before getting entirely across his automobile was struck by a train from the northwest and he was seriously injured.

The jury found the defendant was negligent in failing to sound proper warnings and in an improper grading of the highway on the railroad's right of way. While there was evidence to the contrary, there is substantial, competent evidence that no whistle was blown at either of the whistling posts above mentioned, nor the bell rung as warnings for the approach of the train. The fact that the grade on the highway at the intersection had not been established, as provided by statute, is not controverted. The findings of the jury, therefore, settle the question of defendant's negligence.

The question of plaintiff's contributory negligence will now be considered. It will be observed that the situation was such that one coming from the south could not cross this intersection safely if he depended alone on seeing the train. There was evidence that if one were to stop his car when the front wheels were about seven feet south of the rails and go on the track and look for a train, or go to the point thirty-five feet north of the track in the highway and look for the train, and the train should not be in sight when he looked from either position, he could not go back to the car, start it and get

across the track without being overtaken by the train if it were approaching just beyond his point of vision when he looked. Plaintiff testified he had given much thought to the safest method of crossing the track; that he would add nothing to his safety by getting out, going ahead and looking and returning to his car and then attempting to cross; that the method he pursued the morning in question was, in his judgment, the safest way to negotiate the crossing.

Appellant contends that it was plaintiff's duty to stop his automobile before going on the track, and if he could not then see or hear a train, to get out of the automobile and go on the track, or to a point beyond the track in the highway where he could get the greatest range of vision of the track, and there look for a train; and that if he did not do so he is negligent as a matter of law, even though his doing so would not have added to his safety in crossing the track. This contention cannot be sustained. In *Jacobs v. Railway Co.*, 97 Kan. 247, 251, 154 Pac. 1023, it was said:

"It has been held that it is the positive duty of the driver of an automobile to stop, look and listen before crossing railroad tracks. [Citing cases.] On the other hand, it has been held that the driver of an automobile is not under all circumstances as a matter of law required to stop before crossing a railroad track. [Citing cases.] This state follows the rule last stated. [Citing previous Kansas cases.]"

This rule was again discussed in *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742, where the quotation last made was set out with approval. It was there held that the driver of the automobile was guilty of negligence as a matter of law because he did not stop, but this was because he could thereby have added to his safety. The real question in each case is whether the driver of the automobile used due care for his own safety in attempting to cross the track. A railroad track is itself a sign of danger. One attempting to cross it must know that the train cannot stop for him, and that if a train strikes him while he is on the crossing, he is likely to be seriously injured or killed. Due care on his part, therefore, requires that he use every means, and his senses of sight and hearing, consistent with his own safety. If the situation is such that he can add to his safety by having his automobile come to a full stop before going on the railroad track and there looking as well as listening for a train, or if his safety could be promoted by his getting out of his automobile and going on the railroad track, or even beyond it

to a place where he could see farther along the track, prudence and due care would require that he do those things. But this court has never held that a traveler on a highway was compelled to stop, or to get out of his car and go on the track or beyond to look for a train, or to do any of those things, if the doing of them would not in fact add to his safety in crossing the track. Certainly one cannot be charged with negligence for failing to do a thing which adds to his danger.

In *Scott v. Railway Co.*, 113 Kan. 477, 215 Pac. 280, we had a situation quite similar to this, except in that case Scott was killed by being struck by a train while attempting to cross the track in an automobile. He was traveling alone, and no one saw him approach the track so as to testify whether he stopped just before going on to the track, or whether he got out, went ahead and looked, or not. In that case, if Scott, when from nine to fourteen feet from the track, had looked, he could have seen from 400 to 600 feet up the track in the direction from which the train was coming. If he had there stopped his automobile and gone up on the track he could have seen for a greater distance. The court was forced to presume that he did the things which would enable him to cross the track in safety, but having done those things and having started to cross the track he was struck by the train, then it could not be said as a matter of law that Scott was guilty of contributory negligence. This case was cited approvingly in *Peterson v. Railway Co.*, 115 Kan. 751, 755, 225 Pac. 116, where a similar question arose. That case quoted approvingly from *Beckham v. Hines*, 279 Fed. 241, where it was held:

"A person driving an automobile on a highway is not bound as matter of law to actually stop before going upon a railroad crossing, but whether it was negligence to fail to do so is a question of fact for the jury."

The facts may be such, of course, that the failure to stop would be negligence as a matter of law; but here the facts, as shown by the evidence, are that plaintiff would have added nothing to his safety by doing so, and the rule that one must stop when he can add to his safety by doing so has no application. In this case the question of plaintiff's contributory negligence was properly a jury question.

Appellant complains of evidence offered on behalf of the plaintiff. Some time after the collision and before the trial, tests were made at this crossing. These consisted in timing trains from their emer-

gence in sight to their arrival at the crossing, determining the extent to which sounds could be heard, fixing the distances at which the trains could be sighted from the different points available to a traveler on the highway, and determining the interval of time necessarily consumed by a traveler in getting over the track by each of the three methods open to him: (1) Merely stopping to look, (2) stopping and going to the track to look, and (3) stopping and going to the point of farthest view, thirty-five feet on the other side, to look. These tests tended to prove that the safest way to negotiate that crossing was for the traveler to slow his car down practically to a stop at a point on the south side of the track when the front of his car was about seven feet from the south rail, and if he could not then see or hear a train approaching from the northwest for him then to put on his power and hasten across the track; and that he could not add to his safety either by bringing his car to a dead stop at the point just south of the railroad track, or by stopping his car there with his engine running and getting out of it and going forward either on the track or to a point thirty-five feet north of it, and then returning to his car and endeavoring to cross. The witnesses who made these tests testified concerning them. That evidence was properly received. See discussion on this point in *Johnson v. Railroad Co.*, 80 Kan. 456, 103 Pac. 90; 1 Wigmore on Evidence, 2d ed., § 445.

Defendant's claim adjuster saw plaintiff at the hospital a few days after his injury, and after talking with plaintiff wrote a statement which plaintiff signed, which purported to give plaintiff's version of how the collision occurred. Defendant attached a copy of this statement to its answer and pleaded it as a defense. In reply plaintiff neither admitted nor denied that he signed the particular statement, and alleged the circumstances under which the adjuster visited him, his physical and mental condition, and averred that if he signed the statement set out it contained statements which had not been made by him and which had not been read or explained to him. Defendant contends that this statement is a "writing" within the meaning of R. S. 77-201, 18th clause, and that the legal effect of pleading it, under R. S. 60-729, was to entitle defendant to judgment on the pleadings, unless plaintiff denied its execution under oath. Clearly this argument is far-fetched. This is not an action founded on a written instrument; it is an action in tort. This statement was neither the foundation of a cause of action nor of defense;

at most it was only evidence of statements of plaintiff against his interest. Even if, by virtue of the statute, its execution by plaintiff is admitted, the reply is, in effect, a confession and avoidance.

Other matters complained of by appellant have been examined and found to be without substantial merit.

The judgment of the court below is affirmed.