**Paul J. ATKINSON, Appellant,**

v.

**The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Respondent.**

No. 46332.

Supreme Court of Missouri,

Division No. 2.

Sept. 8, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 13, 1958.

---

Lyman Field, James L. Muller, Rogers, Field, Gentry & Jackson, Kansas City, Simeon Webb, Pittsburg, Kan., for appellant.

George L. Gordon, Sam D. Parker, Jack W. R. Headley, Kansas City, for respondent.

BARRETT, Commissioner.

Upon the trial of this action against the Atchison, Topeka & Santa Fe Railway Company to recover damages for personal injuries Paul J. Atkinson was awarded $32,500. The trial court sustained the railroad's motion for judgment and in the alternative ground five of its motion for a new trial, that a verdict should have been directed for the railroad at the close of the plaintiff's evidence. The railroad offered no evidence and upon the plaintiff Atkinson's appeal the issues, in so far as the essential merits of a cause of action are concerned, have been simplified in that the railroad admits the sufficiency and substantiality of the evidence of its negligence. The railroad seeks to justify the trial court's ruling upon the sole ground that under the law of Kansas the plaintiff's evidence establishes his contributory negligence as a matter of law.

These, in brief, are the background facts and circumstances: The direction of the railroad through Humboldt, Kansas, is north and south. At the point with which we are concerned, just south of the depot, there is a switch track and a main-line track, and across the tracks is a planked crossing. The distance between the inner rails of the two tracks is eleven feet six inches, and the rails of each track are, of course, 4 feet 8½ inches apart, and the overhang of an engine on the main line is 2 feet nine inches and the overhang of boxcars on the switch track ranged from 2 feet 10 inches to 3 feet. Mr. Atkinson lived about 200 feet east of the tracks; he had lived there since 1938 and was most familiar with the railroad's trains, the depot, and particularly with the plank crossing and the gravel road up to the crossing. On March 10, 1953, there was a string of thirty-five freight and coal cars standing on the switch track, the boxcar nearest the crossing being but ten feet from its north edge. The boxcars obstructed an approaching motorist's view of the main-line track to the north. About 6:15 on that day Mr. Atkinson and his wife approached the crossing on the gravel road from the east in his 1948 Dodge truck. It was daylight, a clear day, and the window on Mrs. Atkinson's side of the truck was down. The truck was in good operating order, made but little noise, and at a speed of 4 to 5 miles an hour could be stopped in 9 to 10 feet. Mr. Atkinson was driving at that speed and had been since he left home. As he approached the switch track he saw the string of boxcars and was aware of the fact that they obstructed his view to the north; he had seen freight cars there before but never that close to the crossing. His hearing was good, there were no noises to interfere with his hearing, and he was listening and looking, as much as the circumstances permitted, for a train on the main line although there was no train scheduled at that hour as he also knew. He could see to the south but because of the thirty-five cars (704 feet in length) on the switch track he could not see the main-line track to the north. He listened but did not hear the noise of a train and did not hear a diesel horn or whistle. (One of the admitted acts of primary negligence was the failure of the diesel engine and freight train to signal.) In any event, as Mr. Atkinson approached the crossing at a speed of 4 to 5 miles an hour, listening, the boxcars obscured his view to the north and, since it was 7 to 8 feet from the bumper of the truck to his seat in the cab, he could not see "any distance up the track" until he emerged from behind or "was past" the boxcar (upon which he says he kept his eyes) nearest the crossing and when he did the front wheels of his truck were on the main-line track and for the first time he saw the train traveling from the north at an admitted speed of 55 miles an hour (another of the admitted acts of primary negligence); the plaintiff's evidence showed a speed of 65 or 75 to 80 miles an hour, and then but "50, 75, maybe 100 feet" away. Since the front truck wheels were then on the main-line track he "floorboarded it," nevertheless the diesel engine hit the right rear wheels of the truck resulting in Mrs. Atkinson's death and Mr. Atkinson's injuries.

■ The appellant Atkinson insists that he was not contributorily negligent as a matter of law in failing to stop or to reconnoiter the crossing on foot, chiefly for the asserted reasons that such action would have been futile or would have increased the hazard. Considering the latter argument first, it is not, as we understand, either the law of Kansas or the railroad's contention upon this appeal that Mr. Atkinson was under an absolute duty, in the particular circumstances, to leave his truck and reconnoiter the crossing on foot and that in failing to do so he is to be declared guilty of contributory negligence as a matter of law. Torgeson v. Missouri-Kansas-Texas R. Co., 124 Kan. 798, 801–802, 262 P. 564, 565, 55 A.L.R. 1335; Pokora v. Wabash R. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149; Annotations, 91 A.L.R.

1055; 56 A.L.R. 647. The railroad's contention is twofold: (1) that under Kansas law "plaintiff's evidence establishes plaintiff's negligence as a matter of law because plaintiff could see up the main line as much as 200 feet from a point where plaintiff's truck was still in the clear, and had plaintiff looked and been prepared to stop at such point he would have seen the train and the accident would have not occurred," and (2) "Even if plaintiff's view up the main line had been completely obstructed until plaintiff's truck was in the danger zone, plaintiff was negligent as a matter of law in failing to slow down, stop, or otherwise make certain it was safe to cross the main line." Therefore it is urged that the case plainly falls within and is governed by Horton v. Atchison, T. & S. F. Ry. Co., 161 Kan. 403, 168 P.2d 928 and Wehe v. Atchison, T. & S. F. Ry. Co., 97 Kan. 794, 156 P. 742, L.R.A.1916E, 455.

The railroad's assertion that Mr. Atkinson could see north up the main-line track a distance of 200 feet when his truck was still in the clear is based upon its cross-examination of him with respect to one of the ten photographs introduced in evidence on his behalf. That particular photograph, exhibit 10, was taken with the camera placed directly above the west rail of the switch track and 52 inches north of the south edge of the crossing. After again establishing on cross-examination that Mr. Atkinson could not see any distance up the main-line track to the north when the front wheels of his truck were on the switch track, railroad counsel confronted him with the photograph and there were these questions and answers:

"Q. * * * I want to show you what is marked here as Plaintiff's Exhibit 10, and referring to that, Mr. Atkinson, about how far with reference to this pole that is up * * * With regard to this pole that has been placed there, picturing the edge of the boxcar, about how far in your estimation can you see up the track there?

* * * * * *

"A. Well, according to that, you could see around 200 feet, maybe.

* * * * * *

"Q. Is 200 feet about your best estimate on that? A. It wouldn't be over that.

* * * * * *

"Q. And you didn't see this train until it was about 50, 75 or 100 feet away? A. That is right."

It is not necessary to say whether the cross-examination conclusively establishes the physical facts; the exhibits were introduced on behalf of the plaintiff and Mr. Atkinson personally located the pole (Compare: Ruhl v. Missouri Pac. R. Co., Mo., 304 S.W.2d 16; Schaefer v. Arkansas Valley Interurban Ry. Co., 104 Kan. 394, 179 P. 323, and Donald v. Missouri-Kansas-Texas R. Co., Mo., 231 S.W.2d 627) and so it is assumed that from the camera's location he could see north up the main-line track a distance of 200 feet. But in the circumstances of this case the assumed fact does not establish his contributory negligence as a matter of law. If we correctly understand the railroad's own calculations and argument they do not conclusively demonstrate the additional fact asserted that Mr. Atkinson could see north up the main-line track 200 feet "from a point where plaintiff's truck was still in the clear." This, in summary, is the railroad's argument: Since the camera was directly over the west rail of the switch track that left a space of 11 feet 6 inches (the distance between the tracks) before reaching the east rail of the main line. The distance from the front of plaintiff's truck to where he sat behind the wheel was 7 or 8 feet. The overhang of the diesel engine was 2 feet 9 inches and the inside measurement between the rails was 4 feet 8½ inches. The railroad subtracts the 2 feet 9 inches overhang of the engine from the 11 feet 6 inches between the rails of the two tracks and says that "a distance of 8 feet 9 inches remains." (Italics supplied by

the railroad.) Therefore it is said that if Mr. Atkinson had stopped his truck at a point where he sat in the cab directly over the west rail of the side track, where he could see 200 feet up the main line, " * * he would have been in the clear or he still would have had 9 inches to one foot 9 inches to stop in the clear (8 feet 9 inches less the 7 to 8 feet distance from the front of the truck to where plaintiff sat). At such point in plaintiff's approach the train was in view." Computations are made as to the distances traveled by the train and the truck; the train at 80 miles an hour 117.2 feet per second, the truck's average speed of 4½ miles an hour 6½ feet per second, and therefore the train being 75 feet away when he did see it, it is said that the train was in view and he would have seen it "if he had looked."

The important factor ignored in these calculations, particularly in "a distance of 8 feet 9 inches remains," is that Mr. Atkinson was traveling at a speed of 4 to 5 miles an hour and he did not stop and the evidence is uncontroverted that at a speed of 4 to 5 miles an hour he could stop his truck in "nine to ten feet." Since he did not stop at all it is difficult to see how he could have safely stopped in the distance of 8 feet 9 inches, the point at which in his approach defendant has calculated the train was in view. But the plaintiff did not say that the train was 75 feet away when he could and first did see it; he is not conclusively bound by 75 feet, he said, "50, 75, maybe 100 feet." Neither is he conclusively bound by the train's speed of 80 miles an hour, when first asked how fast the train was traveling he said, "Well, I have an idea but I couldn't say," and when asked to give his "estimation" said, "75 to 80 miles." The railroad admits a speed of 55 miles an hour and one of plaintiff's witnesses estimated its speed at 65 miles an hour. As indicated, upon this particular phase of the argument the factor that is not conclusively established by the photographs or by the railroad's calcula-

tions based upon the assumed facts is the "point where plaintiff's truck was still in the clear." Upon this phase of the appeal the distinction in this case and other cases decided under the law of Kansas is in the differences in the precise distances and speeds and it is not necessary to note the distinguishing factors at this point. In any event, in connection with this phase of the appeal it is the railroad's contention, since the plaintiff could see 200 feet up the track from a point where his truck was in the clear, that it was his duty to have been prepared to stop the truck before reaching the danger zone. In point of fact the essence of this appeal and the determinative factor is whether in failing to stop before proceeding over the crossing Mr. Atkinson is to be declared guilty of contributory negligence as a matter of law. Whether in the circumstances he could see 200 feet or not at all the decisive question is whether in any or all events he was bound to stop; it is not pointed out how he could have otherwise prudently acted and made certain that it was safe to proceed over the crossing.

■ There is of course, in connection with stopping, a duty upon a motorist approaching a railroad crossing, in Kansas as elsewhere, to use his senses of sight and hearing as an ordinarily prudent person would in similar circumstances to determine whether it is safe to cross at that time and place. 44 Am.Jur., Sec. 546, p. 795; Annotations, 1 A.L.R. 203; 41 A.L.R. 405; 42 A.L.R.2d 13. A motorist in exercising due care for his own safety as he approaches a railroad crossing may be under a duty to stop, particularly to render listening and looking effective. The duty to stop, however, is relative, depending on the particular circumstances. 44 Am.Jur., Secs. 547, 550, 555, pp. 798, 802, 808. There is no absolute duty to stop, in Kansas, merely because a motorist is approaching and about to drive over a railroad crossing. The Kansas general rules and cases are set forth and collected in Woodworth v.

Kansas City Public Service Co., Mo., 274 S.W.2d 264, 267. If the senses of hearing and seeing are unavailable and the motorist could have seen or heard the train had he stopped 20 feet from the crossing, or could have seen a train on track four a distance of 1000 feet had he stopped at unobscured track three instead of at track one or two on which there were boxcars, he is to be declared guilty of contributory negligence as a matter of law. Atchison, T. & S. F. Ry. Co. v. Willey, 60 Kan. 819, 58 P. 472; Wehe v. Atchison, T. & S. F. Ry. Co., supra; Rule v. Atchison, T. & S. F. Ry. Co., 107 Kan. 479, 192 P. 729; Richards v. Chicago, R. I. & P. Ry. Co., 157 Kan. 378, 139 P.2d 427; Johnson v. Union Pac. R. Co., 157 Kan. 633, 143 P.2d 630. "But this court has never held that a traveler on a highway was compelled to stop, or to get out of his car and go on the track or beyond to look for a train, or to do any of those things, if the doing of them would not in fact add to his safety in crossing the track." Torgeson v. Missouri-Kansas-Texas R. Co., 124 Kan. 798, 802, 262 P. 564, 565.

In the Torgeson case the view to the northwest was obstructed by a hill and a curve in the tracks; the plaintiff was familiar with the crossing and had he stopped 7 feet from the tracks could have seen a train approaching for a distance of 203 feet, and had he looked from the center of the track could have seen a train approaching for a distance of 450 feet. Instead of stopping when he was seven feet from the track the plaintiff "slowed almost to a stop," looked and listened but did not see or hear the train, and before getting entirely across his automobile was struck by a train, the maximum safety speed of which was 27 miles an hour. Among other factors the court pointed out that "if he depended alone on seeing the train" he could not safely cross the intersection. And, as indicated, it was held that his contributory negligence was a jury question and could not be declared as a matter of law. In Peterson v. Atchison, T. & S. F.

Ry. Co., 115 Kan. 751, 225 P. 116, 117, the plaintiff stopped his truck 8 feet from a switch track, looked and listened but his view was obstructed by a string of boxcars, and when he "had just got past the boxcar" at a speed of about 4 miles an hour he saw for the first time the train approaching at a speed of six or seven miles an hour. In these circumstances the court said, "Whether the plaintiff did all that a prudent man would do, considering all the circumstances, or whether he was guilty of contributory negligence, was a question for the jury." In Scott v. St. Louis-San Francisco Ry. Co., 113 Kan. 477, 215 P. 280, the train approached the crossing at a speed of 50 miles an hour and the deceased approached the crossing in his automobile at a speed of 12½ miles an hour, his view of the track obscured by an embankment and weeds. If he had stopped his automobile 14 feet north of the track he could have seen the approaching train "if it was within 400 feet of the crossing— the matter determined being the extent of the field of vision, and not the place actually occupied by the train." The court pointed out that at 50 miles an hour it would have taken the train 9 seconds to run the "farthest established point of visibility— 600 feet—to the place of the collision." And the court observed: "If it be assumed that the driver stopped his car while he was 14, or even 9, feet from the track, and without leaving it, seeing no train within 400 or possibly 600 feet, started up and tried to cross, the 6 or 9 second interval would be too short to justify saying with certainty that by the exercise of due diligence he could have reached a place of safety on the other side of the track before the arrival of the train." It was held, inferentially if not directly, that deceased's contributory negligence was not to be declared as a matter of law in these circumstances. While Wilson v. Kansas City Public Service Co., Mo., 291 S.W.2d 110, 115, was a streetcar crossing case and the motorist stopped and once looked and did not see a streetcar for a distance of 400 feet but was subsequently

struck by a streetcar traveling at a speed of 25 to 30 miles an hour, some of the observations made in that case are applicable here: "We cannot say that Wilson, or his wife, in thereafter watching the blind corner, (as Mr. Atkinson says he did here) and assuming that no car, properly operated, would have time to appear and collide with them from the south, was not acting as an ordinarily prudent person might do. * * * Such situations may not be judged entirely on after-acquired calculations, or as though Wilson were carrying a slide rule. To say the least, reasonable persons might differ as to whether he, or his wife, were negligent as a matter of law."

The railroad attempts to distinguish these latter cases on the grounds that some of the motorists stopped or exercised care to better avail themselves of sight and hearing before proceeding into the danger zone. But, in the case upon which the railroad principally relies, Horton v. Atchison, T. & S. F. Ry. Co., supra [161 Kan. 403, 168 P.2d 932], the plaintiff stopped 5 feet from the switch track on which there were boxcars 90 feet from the crossing and could see down the track 300 to 400 feet. Although he did not then see a train approaching at a speed of 70 miles an hour the court apparently gave him no credit for having once stopped. "Did he do anything after stopping at the sidetrack and as he was nearing the main track and his vision was improving to assure himself he could proceed over the main track with safety? *The petition does not allege he stopped or looked and listened thereafter.*" (Italics supplied.) The court stated that Kansas "has never adopted the rigid and strict rule obtaining in some jurisdictions which requires a traveler to stop under all circumstances before entering upon a railroad track" but because his view was unobstructed for a distance of 2000 feet after he passed the boxcars it was held that the driver of the semitrailer truck was guilty of contributory negligence as a matter of law.

It is not necessary to quote extensively from his testimony or to further set forth in detail the precise circumstances in which Mr. Atkinson approached and drove upon the crossing and was hit. In some respects the case is close but it is one upon which reasonable minds could differ and for that reason may not be summarily disposed of. The particular circumstances fall within and are governed by Torgeson v. Missouri-Kansas-Texas R. Co., supra; Peterson v. Atchison, T. & S. F. Ry. Co., supra; Scott v. St. Louis-San Francisco Ry. Co., supra; Wilson v. Kansas City Public Service Co., supra, and Turner v. St. Louis-San Francisco Ry. Co., 106 Kan. 591, 189 P. 376, therefore the plaintiff's contributory negligence in failing to stop or otherwise make certain that it was safe to proceed was for the jury to resolve; it should not have been declared by the trial court as a matter of law.

The respondent railroad contends, if the plaintiff was not guilty of contributory negligence as a matter of law, that the $32,500 verdict is excessive. The railroad has not appealed and it is not certain upon this record that the trial court considered the excessiveness of the verdict. The appellant has not questioned the railroad's right to raise the question of excessive verdict and so it is considered.

Mr. Atkinson was sixty-three when the case was tried. Prior to 1947 he had farmed several hundred acres of land near Humboldt. In that year he gave up farming and bought a truck and tractor and thereafter plowed gardens, hauled coal, hay, corn and livestock, butchered cattle and sometimes worked for others. He says that he worked 14 to 16 hours a day and his earnings were $800 to $1000 a year and he had had no earnings from the date of his injury on March 10, 1953, to the date of the trial in February 1957. In describing his injuries he said that his nose was "pretty well cut off," there was a gash across his forehead which required 7 or 8 stitches, and his head was cut open. Dr. Vestle was

two hours sewing up his head, nose and the side of his face. He was admitted to the hospital on March 10th and discharged two days later and was in bed at home for thirty days. At the trial he complained of pain in his head, back and neck and there was pain in his legs. He had tried to work but was unable to do so. Members of his family and his friends and neighbors testified to his prior good health, vigor and capacity for hard work. They also testified to his subsequent inability to work and to his apparent bad physical condition since his injury. While in the hospital he was treated by Dr. Vestle who saw him a few times over a period of 2 or 3 months; he had been seen and treated by a Dr. Christian five or six times, but these doctors did not testify.

In April 1956, he was examined by Dr. Perry. Dr. Perry testified that Mr. Atkinson's complaints were of headaches and dizziness, pain and stiffness in the back of his neck, backache upward and downward, legs numb and cramped. He complained of and the doctor found a marked shortness of breath which he could not "correlate" with a contusion to his chest. Dr. Perry saw and described a three-inch scar across the back of his head, and another head scar two and a half inches long, both of these had healed. There was a one and a half inch scar in the temporal area, several scars on his forehead and a puffy, tender scar on his left cheek. The scars on his forehead, cheek and nose were disfiguring. There was considerable deformity from the left side and bridge of his nose. There was some limitation of forward movement in his neck and some limitation in the movement of his spine. And, there was some osteoarthritic lipping. It was the doctor's conclusion that Mr. Atkinson had some pain from his head and facial injuries, that he had sustained and had some disability from "cerebral concussion, concussion of the brain, so to speak" (the hospital record recites "slight brain concussion"), and probably a fracture of the nasal bone in the left malar region.

The doctor was of the opinion that he had sustained a contusion to his chest and upper abdomen, and a "sprain of the right lumbodorsal muscle group." In answer to a hypothetical question the doctor expressed the opinion that Mr. Atkinson's pains, injuries and disabilities were all attributable to the accident of March 10, 1953. It was the doctor's opinion that the injuries and disabilities were permanent and that there was but little likelihood of Mr. Atkinson's improving in the future. In conclusion, he said, "I think that the man is physically not qualified for employment."

The injuries and verdict here are indeed not comparable to those in McBride v. Clarida, Mo.App., 254 S.W.2d 36, relied on by the railroad, in which a $5000 verdict was reduced to $3000. And the verdicts declared not excessive, in one instance after a remittitur by the trial court, in Pitt v. Kansas City Public Service Co., Mo., 272 S.W.2d 193 and Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W.2d 921 are not particularly helpful or analogous even though one instance involved somewhat comparable injuries. To sustain his verdict the appellant relies upon Adams v. Atchison, T. & S. F. Ry. Co., Mo., 280 S.W.2d 84. There the trail court remitted a $36,000 judgment to $28,000 and it was held that the $28,000 was not demonstrably excessive. While Adams was 59 and had an expectancy of 14.74 years, he had been a locomotive engineer and claimed, if able to work, that he could earn $600 a month as a cabinet maker. He had sustained broken ribs and there appears to have been greater limitation of head movement and plainly an aggravation of a pre-existing arthritic condition. If this case, upon which the appellant places his sole reliance, is the criterion this verdict is plainly excessive. While the plaintiff's evidence supports a finding of permanent injury and disability the proof is not conspiciously impressive. While the Adams case would indicate a reduction of $8000 the injuries there were in fact more serious than here

and the evidence much more impressive. On the particular facts of this case, giving due weight to all the relevant factors, the verdict is excessive in the sum of $10,000.

If, therefore, the plaintiff will, within fifteen days, enter a remittitur in the sum verdict in favor of the plaintiff in the sum of $22,500, otherwise the cause will be remanded for a new trial because of the excessiveness of the verdict.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.